AO 91 (Rev. 11/11) Criminal Complaint (Rev. by USAO on 3/12/20)        ☐ Original        ☐ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Central District of California

| | |
|---|---|
| United States of America<br><br>v.<br><br>BRIESHANAY QUENISE FORD,<br><br>Defendant(s) | Case No. 2:22-mj-01270-DUTY |

**LODGED**
CLERK, U.S. DISTRICT COURT
3/30/2022
CENTRAL DISTRICT OF CALIFORNIA
BY: VAM  DEPUTY

**FILED**
CLERK, U.S. DISTRICT COURT
3/30/2022
CENTRAL DISTRICT OF CALIFORNIA
BY: ib  DEPUTY

## CRIMINAL COMPLAINT BY TELEPHONE
## OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about November 23, 2021, in the county of Los Angeles in the Central District of California, the defendant violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(g)(1) | Felon-In-Possession of a Firearm and Ammunition |

This criminal complaint is based on these facts:

  *Please see attached affidavit.*

☒ Continued on the attached sheet.

/s/ Sarah J. Corcoran
*Complainant's signature*

Sarah J. Corcoran, FBI Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date:  3/30/2022

*Judge's signature*

City and state:  Los Angeles, California        Hon. Alexander F. MacKinnon, U.S. Magistrate Judge
*Printed name and title*

AUSA: Lynda Lao (x7167)

**AFFIDAVIT**

I, Sarah J. Corcoran, being duly sworn, declare and state as follows:

**PURPOSE OF AFFIDAVIT**

1. This affidavit is made in support of a criminal complaint and arrest warrant against Brieshanay Quenise Ford ("**FORD**") for a violation of 18 U.S.C. § 922(g)(1): Felon in Possession of a Firearm and Ammunition.

2. This affidavit is also made in support of an application for a warrant to search the person of **FORD**, as described more fully in Attachment A, for evidence, fruits, or instrumentalities of violations of Title 18, United States Code, Sections 922(g) (Felon in Possession of a Firearm and Ammunition) (the "Subject Offense"), as described more fully in Attachment B.  Attachments A and B are incorporated herein by reference.

3. The facts set forth in this affidavit are based upon my personal observations; my training and experience; and information obtained from various law enforcement personnel and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint, arrest warrant, and search warrant, and does not purport to set forth all of my knowledge of or investigation into this matter.  Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and part only.

1

**BACKGROUND OF AFFIANT**

4.  I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been so employed since April 2010.  I am presently assigned to the Violent Crimes Squad, and work a variety of criminal matters, including the investigation of major offender violations in the Los Angeles Field Office area of responsibility.  These violations include fugitives, kidnappings, hostage taking, robberies, extortions, aggravated threats, assaults on federal officers, firearms violations and felonies at federal facilities.  I also work closely with local law enforcement partners to provide assistance on violent crime investigations.  My employment has vested me with the authority to investigate violations of federal laws.

**SUMMARY OF PROBABLE CAUSE**

5.  On November 23, 2021, Los Angeles Police Department ("LAPD") Officers arrested **FORD**, subsequent to a traffic stop for a missing front license plate in the vicinity of Valerio Street and Etiwanda Avenue in Los Angeles, California. **FORD**, a convicted felon, was in possession of a firearm, found in the crotch area of her jeans. When asked by the searching officer what the item was, **FORD** stated, "my strap."

**STATEMENT OF PROBABLE CAUSE**

6.  Based on my review of law enforcement reports, conversations with other law enforcement agents, and my own knowledge of the investigation, I am aware of the following:

2

### A. Traffic Stop Revealed Driver, FORD, to Be in Possession of a Loaded Firearm on Her Person.

7. Based on my review of the body worn camera footage from LAPD Officers, LAPD police reports, and interviews, I understand the following:

  a. On November 23, 2021, at approximately 4:10 a.m. LAPD Officers Sanchez and Flores activated their police lights and conducted a traffic stop after observing a black 2012 BMW with no front license plate travelling northbound on Etiwanda Avenue approaching Valerio Street. After the vehicle came to a complete stop, officers approached the vehicle and **FORD** handed officers her California driver's license.

  b. Using LAPD department resources, Officer Sanchez learned that **FORD** had a warrant for her arrest and that she was on active formal probation, which required her to submit to searches and seizures at any time. Her probation terms also prohibited **FORD** from possessing any firearms/weapons. Officer Flores conducted a search of **FORD** and felt a hard object inside **FORD**'s jeans. Officer Flores asked **FORD** what the item was, and **FORD** stated, "my strap." Officer Flores then recovered a chrome colored, Phoenix Arms, Model HP22A, .22 caliber handgun, bearing serial number 4574861, from inside **FORD**'s jeans near the crotch area. The firearm contained a fully loaded magazine with ten rounds of .22 caliber ammunition. LAPD officers arrested **FORD** for being a convicted felon in possession of a firearm.

**B.     FORD's Statements**

8.     Based on my review of LAPD police reports and bodycam footage, I understand the following:

a.     Following the recovery of the firearm, **FORD** spontaneously stated, "I have it because I thought someone was following me."

b.     After her arrest, LAPD Officers Sanchez and Flores transported **FORD** to LAPD West Valley Station. Officer Flores advised **FORD** of her Miranda rights, and **FORD** acknowledged that she understood her rights. Immediately thereafter **FORD** refused to answer any further questions.

**C.     FORD's Criminal History**

9.     On January 10, 2022, I reviewed **FORD**'s criminal history and learned that **FORD** has previously been convicted of the following felony crimes punishable by a term of imprisonment exceeding one year:

a.     On or about May 6, 2010, a violation of California Penal Code 459, First Degree Burglary, in the Superior Court for the State of California, County of Los Angeles, Case Number YA077992.

b.     On or about September 9, 2010, a violation of California Penal Code 487(a), Grand Theft by Embezzlement, in the Superior Court for the State of California, County of Los Angeles, Case Number SA075387

c.     On or about March 17, 2020, a violation of California Penal Code 211, First Degree Robbery, in the Superior

4

Court for the State of California, County of Los Angeles, Case Number BA395104.

### D.   Interstate Nexus

10. On March 16, 2022, an FBI Interstate Nexus Expert examined the handgun seized from **FORD** and confirmed that it was a Phoenix Arms, Model HP22A, .22 caliber pistol, bearing serial number 4574861. The handgun was manufactured by Phoenix Arms inside the state of California. According to ATF transaction records, after its manufacture in California, the handgun was shipped to a Federal Firearm Licensee in Arizona and subsequently purchased by an individual in Arizona.

11. Because the handgun was found in California, I believe that it has traveled in, and affected, interstate commerce.

12. On March 14, 2022, an FBI Interstate Nexus Expert examined the 10 rounds of .22 caliber ammunition loaded in the firearm seized from **FORD**, and determined that they were manufactured by Cascade Cartridge, Inc. in either Idaho or Minnesota, outside the state of California.

13. Because the ammunition was found in California, I believe that it has traveled in, and affected, interstate commerce.

### V.   TRAINING AND EXPERIENCE ON FIREARMS OFFENSES

14. From my training, personal experience, and the collective experiences related to me by other law enforcement officers who conduct who conduct firearms investigations, I am aware of the following:

5

      a. Persons who possess, purchase, or sell firearms generally maintain records of their firearm transactions as items of value and usually keep them in their residence, or in places that are readily accessible, and under their physical control, such in their digital devices. It has been my experience that prohibited individuals who own firearms illegally will keep the contact information of the individual who is supplying firearms to prohibited individuals or other individuals involved in criminal activities for future purchases or referrals. Such information is also kept on digital devices.

      b. Many people also keep mementos of their firearms, including digital photographs or recordings of themselves possessing or using firearms on their digital devices. These photographs and recordings are often shared via social media, text messages, and over text messaging applications.

      c. Those who illegally possess firearms often sell their firearms and purchase firearms. Correspondence between persons buying and selling firearms often occurs over phone calls, e-mail, text message, and social media message to and from smartphones, laptops, or other digital devices. This includes sending photos of the firearm between the seller and the buyer, as well as negotiation of price. In my experience, individuals who engage in street sales of firearms frequently use phone calls, e-mail, and text messages to communicate with each other regarding firearms that the sell or offer for sale. In addition, it is common for individuals engaging in the unlawful sale of firearms to have photographs of firearms they

6

or other individuals working with them possess on their cellular phones and other digital devices as they frequently send these photos to each other to boast of their firearms possession and/or to facilitate sales or transfers of firearms.

## VI. TRAINING AND EXPERIENCE ON DIGITAL DEVICES[1]

15. Based on my training, experience, and information from those involved in the forensic examination of digital devices, I know that the following electronic evidence, inter alia, is often retrievable from digital devices:

    a. Forensic methods may uncover electronic files or remnants of such files months or even years after the files have been downloaded, deleted, or viewed via the Internet. Normally, when a person deletes a file on a computer, the data contained in the file does not disappear; rather, the data remain on the hard drive until overwritten by new data, which may only occur after a long period of time. Similarly, files viewed on the Internet are often automatically downloaded into a temporary directory or cache that are only overwritten as they are replaced with more recently downloaded or viewed content and may also be recoverable months or years later.

---

[1] As used herein, the term "digital device" includes any electronic system or device capable of storing or processing data in digital form, including central processing units; desktop, laptop, notebook, and tablet computers; personal digital assistants; wireless communication devices, such as paging devices, mobile telephones, and smart phones; digital cameras; gaming consoles; peripheral input/output devices, such as keyboards, printers, scanners, monitors, and drives; related communications devices, such as modems, routers, cables, and connections; storage media; and security devices.

    b. Digital devices often contain electronic evidence related to a crime, the device's user, or the existence of evidence in other locations, such as, how the device has been used, what it has been used for, who has used it, and who has been responsible for creating or maintaining records, documents, programs, applications, and materials on the device.  That evidence is often stored in logs and other artifacts that are not kept in places where the user stores files, and in places where the user may be unaware of them.  For example, recoverable data can include evidence of deleted or edited files; recently used tasks and processes; online nicknames and passwords in the form of configuration data stored by browser, e-mail, and chat programs; attachment of other devices; times the device was in use; and file creation dates and sequence.

    c. The absence of data on a digital device may be evidence of how the device was used, what it was used for, and who used it.  For example, showing the absence of certain software on a device may be necessary to rebut a claim that the device was being controlled remotely by such software.

    d. Digital device users can also attempt to conceal data by using encryption, steganography, or by using misleading filenames and extensions.  Digital devices may also contain "booby traps" that destroy or alter data if certain procedures are not scrupulously followed.  Law enforcement continuously develops and acquires new methods of decryption, even for devices or data that cannot currently be decrypted.

8

16. Based on my training, experience, and information from those involved in the forensic examination of digital devices, I know that it is not always possible to search devices for data during a search of the premises for a number of reasons, including the following:

    a. Digital data are particularly vulnerable to inadvertent or intentional modification or destruction. Thus, often a controlled environment with specially trained personnel may be necessary to maintain the integrity of and to conduct a complete and accurate analysis of data on digital devices, which may take substantial time, particularly as to the categories of electronic evidence referenced above.

    b. Digital devices capable of storing multiple gigabytes are now commonplace. As an example of the amount of data this equates to, one gigabyte can store close to 19,000 average file size (300kb) Word documents, or 614 photos with an average size of 1.5MB.

17. The search warrant requests authorization to use the biometric unlock features of a device, based on the following, which I know from my training, experience, and review of publicly available materials:

    a. Users may enable a biometric unlock function on some digital devices. To use this function, a user generally displays a physical feature, such as a fingerprint, face, or eye, and the device will automatically unlock if that physical feature matches one the user has stored on the device. To unlock a device enabled with a fingerprint unlock function, a

user places one or more of the user's fingers on a device's fingerprint scanner for approximately one second. To unlock a device enabled with a facial, retina, or iris recognition function, the user holds the device in front of the user's face with the user's eyes open for approximately one second.

        b.   In some circumstances, a biometric unlock function will not unlock a device even if enabled, such as when a device has been restarted or inactive, has not been unlocked for a certain period of time (often 48 hours or less), or after a certain number of unsuccessful unlock attempts. Thus, the opportunity to use a biometric unlock function even on an enabled device may exist for only a short time. I do not know the passcodes of the devices likely to be found in the search.

        c.   The person who is in possession of a device or has the device among his or her belongings is likely a user of the device. Thus, the warrant I am applying for would permit law enforcement personnel to, with respect to any device that appears to have a biometric sensor and falls within the scope of the warrant: (1) depress **FORD**'s thumb- and/or fingers on the device(s); and (2) hold the device(s) in front of **FORD**'s face with his or her eyes open to activate the facial-, iris-, and/or retina-recognition feature.

    18.   Other than what has been described herein, to my knowledge, the United States has not attempted to obtain this data by other means.

10

## VII. CONCLUSION

19. For all of the reasons described above, there is probable cause to believe that **FORD** has committed a violation of 18 U.S.C. § 922(g)(1): Felon in Possession of a Firearm and Ammunition. There is also probable cause that the items to be seized described in Attachment B will be found in a search of the person described in Attachment A.

Attested to by the applicant
in accordance with the
requirements of Fed. R. Crim.
P. 4.1 by telephone on this
30th day of March, 2022.

_____
HON. ALEXANDER F. MACKINNON
UNITED STATES MAGISTRATE JUDGE