# EXHIBIT 4

AO 93C  (Rev. 8/18) Warrant by Telephone of Other Reliable Electronic Means                    ☐ Original    ☐ Duplicate Original

# UNITED STATES DISTRICT COURT
### for the
Central District of California

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) |
| | ) **Case No. 2:22-MJ-01786** |
| Digital Device, as described in Attachment A. | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the Central District of California *(identify the person or describe the property to be searched and give its location)*:

*See Attachment A*

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

*See Attachment B*

Such affidavit(s) or testimony are incorporated herein by reference.

**YOU ARE COMMANDED** to execute this warrant on or before <u>14 days from the date of its issuance</u> *(not to exceed 14 days)*

☒ in the daytime 6:00 a.m. to 10:00 p.m.   ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to <u>the U.S. Magistrate Judge on duty at the time of the return through a filing with the Clerk's Office.</u>

☐ Pursuant to <u>18 U.S.C. § 3103a(b)</u>, I find that immediate notification may have an adverse result listed in <u>18 U.S.C. § 2705</u> (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

☐ for _____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____.

Date and time issued:    <u>5/6/2022          5:05 pm</u>          _____
                                                                                          *Judge's signature*

City and state:        <u>Los Angeles, CA</u>          <u>Hon. Alexander F. MacKinnon, U.S. Magistrate Judge</u>
                                                                                    *Printed name and title*

AUSA: <u>Lynda Lao (x7167)</u>                                                              USAO_000304

AO 93C  (Rev. 8/18) Warrant by Telephone of Other Reliable Electronic Means (Page 2)

**Return**

| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
|---|---|---|
| | | |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

**Certification**

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A

<u>PROPERTY TO BE SEARCHED</u>

The following digital device (the "**SUBJECT DEVICE**"), seized on April 14, 2022, and currently maintained in the custody of the Federal Bureau of Investigation in Los Angeles, California: one dark blue iPhone.



**ATTACHMENT B**

I.   **ITEMS TO BE SEIZED**

1.   The items to be seized are evidence, contraband, fruits, or instrumentalities of violations of Title 18, United States Code, Sections 922(g) (Felon in Possession of a Firearm and Ammunition) (the "Subject Offense"), namely:

a.   Records, documents, programs, applications and materials, or evidence of the absence of same, sufficient to show call log information, including all telephone numbers dialed from any of the digital devices and all telephone numbers accessed through any push-to-talk functions, as well as all received or missed incoming calls;

b.   Records, documents, programs, applications or materials, or evidence of the absence of same, sufficient to show SMS text, email communications or other text or written communications sent to or received from any of the digital devices and which relate to the above-named violation;

c.   Records, documents, programs, applications or materials, or evidence of the absence of same, sufficient to show instant and social media messages (such as Facebook, Facebook Messenger, Snapchat, FaceTime, Skype, and WhatsApp), SMS text, email communications, or other text or written communications sent to or received from any digital device and which relate to the above-named violation;

d.   Records, documents, programs, applications, materials, or conversations relating to the sale or purchase of guns or ammunition, including correspondence, receipts, records,

and documents noting prices or times when guns or ammunition were bought, sold, or otherwise distributed;

e.   Audio recordings, pictures, video recordings, or still captured images related to the purchase, sale, transportation, or distribution of guns or ammunition;

f.   Contents of any calendar or date book;

g.   Global Positioning System ("GPS") coordinates and other information or records identifying travel routes, destinations, origination points, and other locations; and

h.   Any SUBJECT DEVICE which is itself or which contains evidence, contraband, fruits, or instrumentalities of the Subject Offenses, and forensic copies thereof.

i.   With respect to any SUBJECT DEVICE containing evidence falling within the scope of the foregoing categories of items to be seized:

i.   evidence of who used, owned, or controlled the device at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, e-mail, e-mail contacts, chat and instant messaging logs, photographs, and correspondence;

ii.   evidence of the presence or absence of software that would allow others to control the device, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

iii. evidence of the attachment of other devices;

USAO_000308

iv.   evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the device;

v.   evidence of the times the device was used;

vi.   passwords, encryption keys, biometric keys, and other access devices that may be necessary to access the device;

vii. applications, utility programs, compilers, interpreters, or other software, as well as documentation and manuals, that may be necessary to access the device or to conduct a forensic examination of it;

viii.   records of or information about Internet Protocol addresses used by the device;

ix.   records of or information about the device's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

2.   As used herein, the terms "records," "documents," "programs," "applications," and "materials" include records, documents, programs, applications, and materials created, modified, or stored in any form, including in digital form on any digital device and any forensic copies thereof.

## II.   SEARCH PROCEDURE FOR SUBJECT DEVICE

3.   In searching the SUBJECT DEVICE (or forensic copies thereof), law enforcement personnel executing this search warrant will employ the following procedure:

iii

a.   Law enforcement personnel or other individuals assisting law enforcement personnel (the "search team") may search any SUBJECT DEVICE capable of being used to facilitate the above-listed violations or containing data falling within the scope of the items to be seized.

b.   The search team will, in its discretion, either search each SUBJECT DEVICE where it is currently located or transport it to an appropriate law enforcement laboratory or similar facility to be searched at that location.

c.   The search team shall complete the search of the SUBJECT DEVICE as soon as is practicable but not to exceed 120 days from the date of issuance of the warrant. The government will not search the SUBJECT DEVICE beyond this 120-day period without obtaining an extension of time order from the Court.

d.   The search team will conduct the search only by using search protocols specifically chosen to identify only the specific items to be seized under this warrant.

i.   The search team may subject all of the data contained in each SUBJECT DEVICE capable of containing any of the items to be seized to the search protocols to determine whether the SUBJECT DEVICE and any data thereon falls within the scope of the items to be seized. The search team may also search for and attempt to recover deleted, "hidden," or encrypted data to determine, pursuant to the search protocols, whether the data falls within the scope of the items to be seized.

iv

USAO_000310

ii.   The search team may use tools to exclude normal operating system files and standard third-party software that do not need to be searched.

iii. The search team may use forensic examination and searching tools, such as "EnCase" and "FTK" (Forensic Tool Kit), which tools may use hashing and other sophisticated techniques.

e.   The search team will not seize contraband or evidence relating to other crimes outside the scope of the items to be seized without first obtaining a further warrant to search for and seize such contraband or evidence.

f.   If the search determines that a SUBJECT DEVICE does not contain any data falling within the list of items to be seized, the government will, as soon as is practicable, return the SUBJECT DEVICE and delete or destroy all forensic copies thereof.

g.   If the search determines that a SUBJECT DEVICE does contain data falling within the list of items to be seized, the government may make and retain copies of such data, and may access such data at any time.

h.   If the search determines that the SUBJECT DEVICE is (1) itself an item to be seized and/or (2) contains data falling within the list of other items to be seized, the government may retain the digital device and any forensic copies of the digital device, but may not access data falling outside the scope of the other items to be seized (after the time for searching the device has expired) absent further court order.

v

USAO_000311

i.   The government may also retain a SUBJECT DEVICE
if the government, prior to the end of the search period,
obtains an order from the Court authorizing retention of the
device (or while an application for such an order is pending),
including in circumstances where the government has not been
able to fully search a device because the device or files
contained therein is/are encrypted.

j.   After the completion of the search of the SUBJECT
DEVICE, the government shall not access digital data falling
outside the scope of the items to be seized absent further order
of the Court.

4.   The review of the electronic data obtained pursuant to
this warrant may be conducted by any government personnel
assisting in the investigation, who may include, in addition to
law enforcement officers and agents, attorneys for the
government, attorney support staff, and technical experts.
Pursuant to this warrant, the investigating agency may deliver a
complete copy of the seized or copied electronic data to the
custody and control of attorneys for the government and their
support staff for their independent review.

5.   The special procedures relating to digital devices
found in this warrant govern only the search of digital devices
pursuant to the authority conferred by this warrant and do not
apply to any search of digital devices pursuant to any other
court order.

USAO_000312

# EXHIBIT 1

USAO_000313

AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

## UNITED STATES DISTRICT COURT
### for the
Central District of California

| | FILED |
|---|---|
| | CLERK, U.S. DISTRICT COURT |
| | **3/30/2022** |
| | CENTRAL DISTRICT OF CALIFORNIA |
| | BY:          ib          DEPUTY |

In the Matter of the Search of:

Brieshanay Quenise Ford, as described in
Attachment A

)
)
)
)
)

Case No.    2:22-mj-01272-DUTY

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

*See Attachment A*

located in the Central District of California, there is now concealed *(identify the person or describe the property to be seized)*:

*See Attachment B*

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☒ evidence of a crime;

☒ contraband, fruits of crime, or other items illegally possessed;

☒ property designed for use, intended for use, or used in committing a crime;

☒ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Sections | Offense Description |
|---|---|
| 18 U.S.C. § 922(g)(1) | Felon-In-Possession of a Firearm and Ammunition |

The application is based on these facts:

*See attached Affidavit, which is incorporated herein by reference.*

/s/ Sarah J. Corcoran
_____
*Applicant's signature*

Sarah J. Corcoran, FBI Special Agent
_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date:  3/30/2022
_____
*Judge's signature*

City and state: Los Angeles, CA

Hon. Alexander F. MacKinnon, U.S. Magistrate Judge
_____
*Printed name and title*

AUSA: Lynda Lao — 213-894-7167

USAO_000314

## <u>ATTACHMENT A</u>

<u>PERSON TO BE SEARCHED</u>

The person of **BRIESHANAY QUENISE FORD** ("**FORD**"), date of birth November 16, 1990, with California Driver's License Number E1249804.  **FORD**'s California Department of Motor Vehicles records lists her as standing 4'11" tall, with black hair and brown eyes.

The search of **FORD** shall include any and all clothing and personal belongings, digital devices, backpacks, wallets, briefcases, purses, folders, and bags that are within **FORD**'s immediate vicinity and control at the location where the search is executed.  The search shall not include a strip search or a body cavity search.

i

**ATTACHMENT B**

**I.** **ITEMS TO BE SEIZED**

1.     The items to be seized are evidence, contraband, fruits, or instrumentalities of violations of Title 18, United States Code, Sections 922(g) (Felon in Possession of a Firearm and Ammunition) (the "Subject Offense"), namely:

        a.    Firearms or ammunition;

        b.    Records, documents, programs, applications and materials, or evidence of the absence of same, sufficient to show call log information, including all telephone numbers dialed from any of the digital devices and all telephone numbers accessed through any push-to-talk functions, as well as all received or missed incoming calls;

        c.    Records, documents, programs, applications or materials, or evidence of the absence of same, sufficient to show SMS text, email communications or other text or written communications sent to or received from any of the digital devices and which relate to the above-named violation;

        d.    Records, documents, programs, applications or materials, or evidence of the absence of same, sufficient to show instant and social media messages (such as Facebook, Facebook Messenger, Snapchat, FaceTime, Skype, and WhatsApp), SMS text, email communications, or other text or written communications sent to or received from any digital device and which relate to the above-named violation;

        e.    Records, documents, programs, applications, materials, or conversations relating to the sale or purchase of

ii

USAO_000316

guns or ammunition, including correspondence, receipts, records, and documents noting prices or times when guns or ammunition were bought, sold, or otherwise distributed;

f.   Audio recordings, pictures, video recordings, or still captured images related to the purchase, sale, transportation, or distribution of guns or ammunition;

g.   Contents of any calendar or date book;

h.   Global Positioning System ("GPS") coordinates and other information or records identifying travel routes, destinations, origination points, and other locations; and

i.   Any digital device which is itself or which contains evidence, contraband, fruits, or instrumentalities of the Subject Offenses, and forensic copies thereof.

j.   With respect to any digital device containing evidence falling within the scope of the foregoing categories of items to be seized:

i.   evidence of who used, owned, or controlled the device at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, e-mail, e-mail contacts, chat and instant messaging logs, photographs, and correspondence;

ii.   evidence of the presence or absence of software that would allow others to control the device, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

USAO_000317

iii. evidence of the attachment of other devices;

iv.  evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the device;

v.   evidence of the times the device was used;

vi.  passwords, encryption keys, biometric keys, and other access devices that may be necessary to access the device;

vii. applications, utility programs, compilers, interpreters, or other software, as well as documentation and manuals, that may be necessary to access the device or to conduct a forensic examination of it;

viii.    records of or information about Internet Protocol addresses used by the device;

ix.  records of or information about the device's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

2.   As used herein, the terms "records," "documents," "programs," "applications," and "materials" include records, documents, programs, applications, and materials created, modified, or stored in any form, including in digital form on any digital device and any forensic copies thereof.

3.   As used herein, the term "digital device" includes any electronic system or device capable of storing or processing data in digital form, including central processing units;

iv

desktop, laptop, notebook, and tablet computers; personal digital assistants; wireless communication devices, such as telephone paging devices, beepers, mobile telephones, and smart phones; digital cameras; gaming consoles (including Sony PlayStations and Microsoft Xboxes); peripheral input/output devices, such as keyboards, printers, scanners, plotters, monitors, and drives intended for removable media; related communications devices, such as modems, routers, cables, and connections; storage media, such as hard disk drives, floppy disks, memory cards, optical disks, and magnetic tapes used to store digital data (excluding analog tapes such as VHS); and security devices.

## II.   <u>SEARCH PROCEDURE FOR DIGITAL DEVICE(S)</u>

4.   In searching digital devices (or forensic copies thereof), law enforcement personnel executing this search warrant will employ the following procedure:

a.   Law enforcement personnel or other individuals assisting law enforcement personnel (the "search team") will, in their discretion, either search the digital device(s) on-site or seize and transport the device(s) and/or forensic image(s) thereof to an appropriate law enforcement laboratory or similar facility to be searched at that location.  The search team shall complete the search as soon as is practicable but not to exceed 120 days from the date of execution of the warrant.  The government will not search the digital device(s) and/or forensic image(s) thereof beyond this 120-day period without obtaining an extension of time order from the Court.

USAO_000319

b.   The search team will conduct the search only by using search protocols specifically chosen to identify only the specific items to be seized under this warrant.

i.   The search team may subject all of the data contained in each digital device capable of containing any of the items to be seized to the search protocols to determine whether the device and any data thereon falls within the list of items to be seized.  The search team may also search for and attempt to recover deleted, "hidden," or encrypted data to determine, pursuant to the search protocols, whether the data falls within the list of items to be seized.

ii.   The search team may use tools to exclude normal operating system files and standard third-party software that do not need to be searched.

iii. The search team may use forensic examination and searching tools, such as "EnCase" and "FTK" (Forensic Tool Kit), which tools may use hashing and other sophisticated techniques.

c.   The search team will not seize contraband or evidence relating to other crimes outside the scope of the items to be seized without first obtaining a further warrant to search for and seize such contraband or evidence.

d.   If the search determines that a digital device does not contain any data falling within the list of items to be seized, the government will, as soon as is practicable, return the device and delete or destroy all forensic copies thereof.

USAO_000320

e.   If the search determines that a digital device does contain data falling within the list of items to be seized, the government may make and retain copies of such data, and may access such data at any time.

f.   If the search determines that a digital device is (1) itself an item to be seized and/or (2) contains data falling within the list of other items to be seized, the government may retain the digital device and any forensic copies of the digital device, but may not access data falling outside the scope of the other items to be seized (after the time for searching the device has expired) absent further court order.

g.   The government may also retain a digital device if the government, prior to the end of the search period, obtains an order from the Court authorizing retention of the device (or while an application for such an order is pending), including in circumstances where the government has not been able to fully search a device because the device or files contained therein is/are encrypted.

h.   After the completion of the search of the digital devices, the government shall not access digital data falling outside the scope of the items to be seized absent further order of the Court.

5.   In order to search for data capable of being read or interpreted by a digital device, law enforcement personnel are authorized to seize the following items:

USAO_000321

a.   Any digital device capable of being used to commit, further, or store evidence of the offense(s) listed above;

b.   Any equipment used to facilitate the transmission, creation, display, encoding, or storage of digital data;

c.   Any magnetic, electronic, or optical storage device capable of storing digital data;

d.   Any documentation, operating logs, or reference manuals regarding the operation of the digital device or software used in the digital device;

e.   Any applications, utility programs, compilers, interpreters, or other software used to facilitate direct or indirect communication with the digital device;

f.   Any physical keys, encryption devices, dongles, or similar physical items that are necessary to gain access to the digital device or data stored on the digital device; and

g.   Any passwords, password files, biometric keys, test keys, encryption codes, or other information necessary to access the digital device or data stored on the digital device.

6.   The review of the electronic data obtained pursuant to this warrant may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the investigating agency may deliver a complete copy of the seized or copied electronic data to the

USAO_000322

custody and control of attorneys for the government and their support staff for their independent review.

    7.   During the execution of this search warrant, law enforcement is permitted to: (1) depress **BRIESHANAY QUENISE FORD**'s thumb- and/or fingers onto the fingerprint sensor of the digital device (only when the device has such a sensor), and direct which specific finger(s) and/or thumb(s) shall be depressed; and (2) hold the device in front of **FORD**'s face with his or her eyes open to activate the facial-, iris-, or retina-recognition feature, in order to gain access to the contents of any such device.  In depressing a person's thumb or finger onto a device and in holding a device in front of a person's face, law enforcement may not use excessive force, as defined in Graham v. Connor, 490 U.S. 386 (1989); specifically, law enforcement may use no more than objectively reasonable force in light of the facts and circumstances confronting them.

    8.   The special procedures relating to digital devices found in this warrant govern only the search of digital devices pursuant to the authority conferred by this warrant and do not apply to any search of digital devices pursuant to any other court order.

USAO_000323

## AFFIDAVIT

I, Sarah J. Corcoran, being duly sworn, declare and state as follows:

### PURPOSE OF AFFIDAVIT

1.    This affidavit is made in support of a criminal complaint and arrest warrant against Brieshanay Quenise Ford ("**FORD**") for a violation of <u>18 U.S.C. § 922(g)(1)</u>: Felon in Possession of a Firearm and Ammunition.

2.    This affidavit is also made in support of an application for a warrant to search the person of **FORD**, as described more fully in Attachment A, for evidence, fruits, or instrumentalities of violations of Title 18, United States Code, Sections 922(g) (Felon in Possession of a Firearm and Ammunition) (the "Subject Offense"), as described more fully in Attachment B.  Attachments A and B are incorporated herein by reference.

3.    The facts set forth in this affidavit are based upon my personal observations; my training and experience; and information obtained from various law enforcement personnel and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint, arrest warrant, and search warrant, and does not purport to set forth all of my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and part only.

1

## BACKGROUND OF AFFIANT

4.   I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been so employed since April 2010.  I am presently assigned to the Violent Crimes Squad, and work a variety of criminal matters, including the investigation of major offender violations in the Los Angeles Field Office area of responsibility.  These violations include fugitives, kidnappings, hostage taking, robberies, extortions, aggravated threats, assaults on federal officers, firearms violations and felonies at federal facilities.  I also work closely with local law enforcement partners to provide assistance on violent crime investigations.  My employment has vested me with the authority to investigate violations of federal laws.

## SUMMARY OF PROBABLE CAUSE

5.   On November 23, 2021, Los Angeles Police Department ("LAPD") Officers arrested **FORD**, subsequent to a traffic stop for a missing front license plate in the vicinity of Valerio Street and Etiwanda Avenue in Los Angeles, California. **FORD**, a convicted felon, was in possession of a firearm, found in the crotch area of her jeans. When asked by the searching officer what the item was, **FORD** stated, "my strap."

## STATEMENT OF PROBABLE CAUSE

6.   Based on my review of law enforcement reports, conversations with other law enforcement agents, and my own knowledge of the investigation, I am aware of the following:

2

USAO_000325

**A.    Traffic Stop Revealed Driver, FORD, to Be in Possession of a Loaded Firearm on Her Person.**

7.    Based on my review of the body worn camera footage from LAPD Officers, LAPD police reports, and interviews, I understand the following:

a.    On November 23, 2021, at approximately 4:10 a.m. LAPD Officers Sanchez and Flores activated their police lights and conducted a traffic stop after observing a black 2012 BMW with no front license plate travelling northbound on Etiwanda Avenue approaching Valerio Street. After the vehicle came to a complete stop, officers approached the vehicle and **FORD** handed officers her California driver's license.

b.    Using LAPD department resources, Officer Sanchez learned that **FORD** had a warrant for her arrest and that she was on active formal probation, which required her to submit to searches and seizures at any time. Her probation terms also prohibited **FORD** from possessing any firearms/weapons. Officer Flores conducted a search of **FORD** and felt a hard object inside **FORD**'s jeans. Officer Flores asked **FORD** what the item was, and **FORD** stated, "my strap." Officer Flores then recovered a chrome colored, Phoenix Arms, Model HP22A, .22 caliber handgun, bearing serial number 4574861, from inside **FORD**'s jeans near the crotch area. The firearm contained a fully loaded magazine with ten rounds of .22 caliber ammunition. LAPD officers arrested **FORD** for being a convicted felon in possession of a firearm.

USAO_000326

**B.    FORD's Statements**

8.    Based on my review of LAPD police reports and bodycam footage, I understand the following:

a.    Following the recovery of the firearm, **FORD** spontaneously stated, "I have it because I thought someone was following me."

b.    After her arrest, LAPD Officers Sanchez and Flores transported **FORD** to LAPD West Valley Station. Officer Flores advised **FORD** of her Miranda rights, and **FORD** acknowledged that she understood her rights. Immediately thereafter **FORD** refused to answer any further questions.

**C.    FORD's Criminal History**

9.    On January 10, 2022, I reviewed **FORD**'s criminal history and learned that **FORD** has previously been convicted of the following felony crimes punishable by a term of imprisonment exceeding one year:

a.    On or about May 6, 2010, a violation of California Penal Code 459, First Degree Burglary, in the Superior Court for the State of California, County of Los Angeles, Case Number YA077992.

b.    On or about September 9, 2010, a violation of California Penal Code 487(a), Grand Theft by Embezzlement, in the Superior Court for the State of California, County of Los Angeles, Case Number SA075387

c.    On or about March 17, 2020, a violation of California Penal Code 211, First Degree Robbery, in the Superior

4

USAO_000327

Court for the State of California, County of Los Angeles, Case
Number BA395104.

    **D.   Interstate Nexus**

   10.  On March 16, 2022, an FBI Interstate Nexus Expert
examined the handgun seized from **FORD** and confirmed that it was
a Phoenix Arms, Model HP22A, .22 caliber pistol, bearing serial
number 4574861. The handgun was manufactured by Phoenix Arms
inside the state of California.  According to ATF transaction
records, after its manufacture in California, the handgun was
shipped to a Federal Firearm Licensee in Arizona and
subsequently purchased by an individual in Arizona.

   11.  Because the handgun was found in California, I believe
that it has traveled in, and affected, interstate commerce.

   12.  On March 14, 2022, an FBI Interstate Nexus Expert
examined the 10 rounds of .22 caliber ammunition loaded in the
firearm seized from **FORD**, and determined that they were
manufactured by Cascade Cartridge, Inc. in either Idaho or
Minnesota, outside the state of California.

   13.  Because the ammunition was found in California, I
believe that it has traveled in, and affected, interstate
commerce.

    **V.   TRAINING AND EXPERIENCE ON FIREARMS OFFENSES**

   14.  From my training, personal experience, and the
collective experiences related to me by other law enforcement
officers who conduct who conduct firearms investigations, I am
aware of the following:

USAO_000328

a.   Persons who possess, purchase, or sell firearms generally maintain records of their firearm transactions as items of value and usually keep them in their residence, or in places that are readily accessible, and under their physical control, such in their digital devices.  It has been my experience that prohibited individuals who own firearms illegally will keep the contact information of the individual who is supplying firearms to prohibited individuals or other individuals involved in criminal activities for future purchases or referrals.  Such information is also kept on digital devices.

b.   Many people also keep mementos of their firearms, including digital photographs or recordings of themselves possessing or using firearms on their digital devices.  These photographs and recordings are often shared via social media, text messages, and over text messaging applications.

c.   Those who illegally possess firearms often sell their firearms and purchase firearms.  Correspondence between persons buying and selling firearms often occurs over phone calls, e-mail, text message, and social media message to and from smartphones, laptops, or other digital devices.  This includes sending photos of the firearm between the seller and the buyer, as well as negotiation of price.  In my experience, individuals who engage in street sales of firearms frequently use phone calls, e-mail, and text messages to communicate with each other regarding firearms that the sell or offer for sale. In addition, it is common for individuals engaging in the unlawful sale of firearms to have photographs of firearms they

6

USAO_000329

or other individuals working with them possess on their cellular phones and other digital devices as they frequently send these photos to each other to boast of their firearms possession and/or to facilitate sales or transfers of firearms.

## VI.   TRAINING AND EXPERIENCE ON DIGITAL DEVICES[1]

15. Based on my training, experience, and information from those involved in the forensic examination of digital devices, I know that the following electronic evidence, inter alia, is often retrievable from digital devices:

a.   Forensic methods may uncover electronic files or remnants of such files months or even years after the files have been downloaded, deleted, or viewed via the Internet. Normally, when a person deletes a file on a computer, the data contained in the file does not disappear; rather, the data remain on the hard drive until overwritten by new data, which may only occur after a long period of time. Similarly, files viewed on the Internet are often automatically downloaded into a temporary directory or cache that are only overwritten as they are replaced with more recently downloaded or viewed content and may also be recoverable months or years later.

---

[1] As used herein, the term "digital device" includes any electronic system or device capable of storing or processing data in digital form, including central processing units; desktop, laptop, notebook, and tablet computers; personal digital assistants; wireless communication devices, such as paging devices, mobile telephones, and smart phones; digital cameras; gaming consoles; peripheral input/output devices, such as keyboards, printers, scanners, monitors, and drives; related communications devices, such as modems, routers, cables, and connections; storage media; and security devices.

USAO_000330

b.    Digital devices often contain electronic evidence related to a crime, the device's user, or the existence of evidence in other locations, such as, how the device has been used, what it has been used for, who has used it, and who has been responsible for creating or maintaining records, documents, programs, applications, and materials on the device.  That evidence is often stored in logs and other artifacts that are not kept in places where the user stores files, and in places where the user may be unaware of them.  For example, recoverable data can include evidence of deleted or edited files; recently used tasks and processes; online nicknames and passwords in the form of configuration data stored by browser, e-mail, and chat programs; attachment of other devices; times the device was in use; and file creation dates and sequence.

c.    The absence of data on a digital device may be evidence of how the device was used, what it was used for, and who used it.  For example, showing the absence of certain software on a device may be necessary to rebut a claim that the device was being controlled remotely by such software.

d.    Digital device users can also attempt to conceal data by using encryption, steganography, or by using misleading filenames and extensions.  Digital devices may also contain "booby traps" that destroy or alter data if certain procedures are not scrupulously followed.  Law enforcement continuously develops and acquires new methods of decryption, even for devices or data that cannot currently be decrypted.

USAO_000331

16.  Based on my training, experience, and information from those involved in the forensic examination of digital devices, I know that it is not always possible to search devices for data during a search of the premises for a number of reasons, including the following:

a.  Digital data are particularly vulnerable to inadvertent or intentional modification or destruction.  Thus, often a controlled environment with specially trained personnel may be necessary to maintain the integrity of and to conduct a complete and accurate analysis of data on digital devices, which may take substantial time, particularly as to the categories of electronic evidence referenced above.

b.  Digital devices capable of storing multiple gigabytes are now commonplace.  As an example of the amount of data this equates to, one gigabyte can store close to 19,000 average file size (300kb) Word documents, or 614 photos with an average size of 1.5MB.

17.  The search warrant requests authorization to use the biometric unlock features of a device, based on the following, which I know from my training, experience, and review of publicly available materials:

a.  Users may enable a biometric unlock function on some digital devices.  To use this function, a user generally displays a physical feature, such as a fingerprint, face, or eye, and the device will automatically unlock if that physical feature matches one the user has stored on the device.  To unlock a device enabled with a fingerprint unlock function, a

9

user places one or more of the user's fingers on a device's fingerprint scanner for approximately one second.  To unlock a device enabled with a facial, retina, or iris recognition function, the user holds the device in front of the user's face with the user's eyes open for approximately one second.

b.    In some circumstances, a biometric unlock function will not unlock a device even if enabled, such as when a device has been restarted or inactive, has not been unlocked for a certain period of time (often 48 hours or less), or after a certain number of unsuccessful unlock attempts.  Thus, the opportunity to use a biometric unlock function even on an enabled device may exist for only a short time.  I do not know the passcodes of the devices likely to be found in the search.

c.    The person who is in possession of a device or has the device among his or her belongings is likely a user of the device.  Thus, the warrant I am applying for would permit law enforcement personnel to, with respect to any device that appears to have a biometric sensor and falls within the scope of the warrant: (1) depress **FORD**'s thumb- and/or fingers on the device(s); and (2) hold the device(s) in front of **FORD**'s face with his or her eyes open to activate the facial-, iris-, and/or retina-recognition feature.

18.  Other than what has been described herein, to my knowledge, the United States has not attempted to obtain this data by other means.

USAO_000333

## VII. <u>CONCLUSION</u>

19.  For all of the reasons described above, there is probable cause to believe that **FORD** has committed a violation of <u>18 U.S.C. § 922(g)(1):</u> Felon in Possession of a Firearm and Ammunition.  There is also probable cause that the items to be seized described in Attachment B will be found in a search of the person described in Attachment A.


Attested to by the applicant
in accordance with the
requirements of <u>Fed. R. Crim.</u>
<u>P. 4.1</u> by telephone on this
<u>30th</u> day of <u>March</u>, 2022.

_____
HON. ALEXANDER F. MACKINNON
UNITED STATES MAGISTRATE JUDGE

USAO_000334