STEPHANIE S. CHRISTENSEN
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
ALEXANDER SU (Cal. Bar No. 297869)
DAVID W. WILLIAMS (Cal. Bar No. 295204)
Assistant United States Attorneys
General Crimes Section
    1200 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-0719/8485
    Facsimile: (213) 894-0141
    E-mail:    Alexander.Su@usdoj.gov
                David.Williams3@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. 2:22-CR-200-PA |
|---|---|
| Plaintiff, | GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR VINDICTIVE PROSECUTION, VINDICTIVE ENFORCEMENT, SELECTIVE ENFORCEMENT, AND TO COMPEL DISCOVERY |
| v. | |
| BRIESHANAY QUENISE FORD, | |
| Defendant. | |
| | Hearing Date: Sept. 6, 2022 Hearing Time: 3:00 p.m. Location:    Courtroom of the Hon. Percy Anderson |

    Plaintiff United States of America, by and through its counsel of record, the Acting United States Attorney for the Central District of California and Assistant United States Attorneys Alexander Su and David W. Williams, hereby files its Opposition to Defendant BRIESHANAY QUENISE FORD's Motion to Dismiss for Vindictive

Prosecution, Vindictive Enforcement, Selective Enforcement, and Motion to Compel Discovery (ECF No. 36).

This Opposition is based upon the attached memorandum of points and authorities, the declaration of Sarah J. Corcoran, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: August 29, 2022          Respectfully submitted,

                                STEPHANIE S. CHRISTENSEN
                                Acting United States Attorney

                                SCOTT M. GARRINGER
                                Assistant United States Attorney
                                Chief, Criminal Division


                                    */s/ David W. Williams*
                                DAVID W. WILLIAMS
                                ALEXANDER SU
                                Assistant United States Attorneys

                                Attorneys for Plaintiff
                                UNITED STATES OF AMERICA

2

**TABLE OF CONTENTS**

DESCRIPTION                                                                        PAGE

I.   INTRODUCTION..................................................................1

II.  STATEMENT OF FACTS............................................................2

     A.   The Underlying Offense: Defendant, a Repeat Felon,
          Carries a Loaded Firearm in November 2021.................2

     B.   Defendant Is Arrested and Interviewed as a Suspect in
          an Unrelated Homicide Investigation in December 2021......3

     C.   The FBI Evaluated Defendant's Firearms Case for
          Federal Enforcement......................................3

     D.   Referral to and Charging Decision by the United States
          Attorney's Office........................................5

III. ARGUMENT......................................................................7

     A.   Defendant Misconstrues the Law By Asserting that a
          Presumption of Vindictiveness Can Apply in the Case......7

     B.   Defendant's Motion Fails Because There Is No Evidence
          the United States Attorney's Office or the FBI Acted
          with an Improper or Vindictive Purpose..................10

          1.   The vindictive prosecution claim fails because
               the prosecutor did not act with an improper
               purpose............................................10

          2.   The selective enforcement claim fails because the
               FBI did not act with an improper purpose...........14

     C.   Defendant's Motion Fails Because Any Purported
          Improper Purpose by Detective Vinton Should Not Be
          Imputed to the Federal Government.......................16

          1.   Improper motive cannot be imputed from one
               sovereign to another...............................17

          2.   The government is not Detective Vinton's
               "stalking horse"...................................17

          3.   This is not "the most extreme case," nor is it
               "outrageous".......................................21

     D.   The Court Should Deny Defendant's Motion to Compel......22

IV.  CONCLUSION...................................................................25

1

**TABLE OF AUTHORITIES**

2

<u>DESCRIPTION</u>                                                                                          <u>PAGE</u>

3

**<u>Cases</u>**

4

<u>Blackledge v. Perry</u>,
   417 U.S. 21 (1974) ............................................... 8

5

<u>Bordenkircher v. Hayes</u>,
   434 U.S. 357 (1978) .............................................. 7

6

<u>Elkins v. United States</u>,
   364 U.S. 206 (1960) ............................................. 13

7

<u>Heaton v. City of Princeton</u>,
   47 F. Supp. 2d 841 (W.D. Ky. 1997) ............................. 16

8

<u>Lacey v. Maricopa Cnty.</u>,
   693 F.3d 896 (9th Cir. 2012) ................................... 14

9

<u>Nunes v. Ramirez-Palmer</u>,
   485 F.3d 432 (9th Cir. 2007) .................................... 9

10

<u>Papas v. Leonard</u>,
   No. 3:10-CV-00550-BR, 2012 WL 1445853 (D. Or. Apr. 25, 2012) ..... 14

11

<u>Rochin v. California</u>,
   342 U.S. 165 (1952) ............................................ 21

12

<u>Rosenbaum v. City & Cnty. of S.F.</u>,
   484 F.3d 1142 (9th Cir.2007) ................................... 14

13

<u>United States v. Armstrong</u>,
   517 U.S. 456 (1996) ......................................... 14, 22

14

<u>United States v. Aviv</u>,
   923 F. Supp. 35 (S.D.N.Y. 1996) ............................. 18, 19

15

<u>United States v. Bautista</u>,
   989 F.3d 698 (9th Cir. 2021) ................................... 15

16

<u>United States v. Camacho</u>,
   499 F. App'x 709 (9th Cir. 2012) .............................. 25

17

<u>United States v. Chong</u>,
   720 F. App'x 329 (9th Cir. 2017) .............................. 16

18

<u>United States v. Dean</u>,
   119 F. Supp. 2d 81 (D. Conn. 2000) ............................ 19

19

<u>United States v. DeMarco</u>,
   550 F.2d 1224 (9th Cir. 1977) ................................. 20

20

<u>United States v. Franco</u>,
   136 F.3d 622 (9th Cir. 1998) .................................. 21

21

<u>United States v. Gallegos-Curiel</u>,
   681 F.2d 1164 (9th Cir. 1982) ............................... 9, 12

22

<u>United States v. Gamez-Orduno</u>,
   235 F.3d 453 (9th Cir. 2000) ........................... 8, 10, 12

23

<u>United States v. Gilbert</u>,
   266 F.3d 1180 (9th Cir. 2001) ................... 11, 12, 20, 21

24

<u>United States v. Gomez-Lopez</u>,
   62 F.3d 304 (9th Cir.1995) .................................... 11

25

<u>United States v. Goodwin</u>,
   457 U.S. 368 (1982) ....................................... 7, 8, 10

26

27

28

ii

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                                                PAGE

United States v. Hinton,
   222 F.3d 664 (9th Cir. 2000) ..................................... 15
United States v. Hollywood Motor Car Co.,
   646 F.2d 384 (9th Cir. 1981) ..................................... 20
United States v. Hollywood Motor Car Co.,
   682 F.2d 1352 (9th Cir. 1982) .................................... 20
United States v. Hooton,
   662 F.2d 628 (9th Cir. 1981) ................................. 19, 20
United States v. Jenkins,
   504 F.3d 694 (9th Cir. 2007) ..................................... 10
United States v. Kent,
   649 F.3d 906 (9th Cir. 2011) ................................. passim
United States v. Koh,
   199 F.3d 632 (2d Cir. 1999) .................................. passim
United States v. Lopez,
   474 F.3d 1208 (9th Cir. 2007) ........................... 2, 13, 20
United States v. McClelland,
   72 F.3d 717 (9th Cir. 1995) ...................................... 21
United States v. Monsoor,
   77 F.3d 1031 (7th Cir. 1996) ................................. 19, 20
United States v. Nance,
   962 F.2d 860 (9th Cir. 1992) ..................................... 13
United States v. Ng,
   699 F.2d 63 (2d Cir. 1983) ....................................... 17
United States v. Noushfar,
   78 F.3d 1442 (9th Cir. 1996) ...................................... 7
United States v. One 1985 Mercedes,
   917 F.2d 415 (9th Cir. 1990) ................................. 22, 23
United States v. Padilla,
   387 F.3d 1087 (9th Cir. 2004) .................................... 16
United States v. Polanco,
   93 F.3d 555 (9th Cir. 1996) ...................................... 16
United States v. Robison,
   644 F.2d 1270 (9th Cir. 1981) ....................... 9, 17, 19, 20
United States v. Sanders,
   211 F.3d 711 (2d Cir. 2000) ............................. 17, 18, 22
United States v. Selfa,
   720 F. App'x 856 (9th Cir. 2018) .............................. 9, 17
United States v. Sellers,
   906 F.3d 848 (9th Cir. 2018) ........................... 22, 23, 24
United States v. Torres,
   853 F. App'x 151 (9th Cir. 2021) ................................. 15
Velasquez v. City of New York Dep't of Buildings,
   No. 19-cv-9687 (PKC), 2020 WL 2614826 (S.D.N.Y. May 22, 2020) .... 14

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                          PAGE

United States v. Walker,
   742 F. App'x 284 (9th Cir. 2018) ................................. 21


**Statutes**

18 U.S.C. § 922(g) ................................................ 24
18 U.S.C. § 922(g)(1) ........................................... 6, 15
Cal. Penal Code § 459 ............................................. 2
Cal. Penal Code § 19800(a)(1) ..................................... 3

1

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

2

## I.   INTRODUCTION

3      Defendant BRIESHANAY QUENISE FORD ("defendant"), a repeat felon

4 with a history of serious convictions and arrests, is charged with

5 illegally possessing a firearm and ammunition.  She now moves to

6 dismiss the indictment for vindictive prosecution and selective

7 enforcement, and in the alternative asks for expansive discovery

8 unrelated to this federal prosecution (the "Motion").  In her Motion,

9 defendant claims that (1) a local Los Angeles police detective

10 violated her Fifth Amendment rights when interviewing her in

11 connection with an unrelated murder investigation, and (2) this same

12 detective referred her firearm case for federal prosecution as

13 purported retribution for her Fifth Amendment invocation.

14      Defendant's motion seeks to transform a straightforward case

15 about a repeat felon's illegal possession of a gun into a trial about

16 an unrelated state murder investigation.  The motion lacks merit and

17 should be denied.  This case was not charged by the local police

18 detective or a state prosecutor; this federal case was brought by the

19 United States Attorney's Office after it determined that the firearms

20 charge merited federal prosecution.  Defendant now makes the novel

21 (and unsupported) claim that a local law enforcement officer's

22 actions and motives are somehow imputed to the federal government --

23 a separate sovereign -- upon requesting federal assistance.  Not so.

24 There is simply no evidence that the prosecutors assigned to the case

25 made the charging decision based on any punitive or vindictive

26 motive, let alone knew about defendant's exercise of a constitutional

27 right in the course of a local law enforcement interview regarding

28 unrelated murder charges.  In any case, given that the Ninth Circuit

has determined that a federal agent's "threat of 'serious federal time' falls short of evidence of vindictiveness," United States v. Lopez, 474 F.3d 1208, 1212 (9th Cir. 2007), overruled on other grounds by United States v. King, 687 F.3d 1189 (9th Cir. 2012), any such purported threat by a local officer (who is neither a member of the prosecution team nor has any involvement in the charging decision) cannot amount to vindictive prosecution.  Defendant's motion to dismiss should be denied and, for similar reasons, so too should her motion to compel discovery.

## II.   STATEMENT OF FACTS

### A.   The Underlying Offense: Defendant, a Repeat Felon, Carries a Loaded Firearm in November 2021

Since 2010, defendant has been convicted of four felonies in California state court: (1) first degree burglary (Cal. Penal Code § 459); (2) grand theft by embezzlement (id. § 487(a); (3) first degree robbery (id. § 211); and (4) attempted burglary in May 2021. (ECF Nos. 17 at 2, 36-6 at 45.)  In 2020, defendant was also charged with child cruelty and carrying a concealed firearm.  (ECF No. 36-6 at 37.)[1]

The offense at issue in this federal case occurred on November 23, 2021.  On that day, Los Angeles Police Department ("LAPD") officers stopped defendant in a car, because the vehicle she was driving did not have a license plate.  Officers then learned that defendant had an active arrest warrant and that she was on probation with search conditions.  They patted her down and found a pistol,

---

[1] The government is unaware whether that matter has resolved. The defense attorney from that case, Alan Fenster, provided a declaration in support of the pending motion.  (ECF No. 36-5.)

2

loaded with 10 rounds of ammunition, in her pants.  (See, e.g., ECF
No. 1, Aff. ¶¶ 5, 7-8.)

The officers arrested defendant for being a felon in possession
of a firearm, in violation of California Penal Code § 19800(a)(1).
(ECF No. 36-6 at 37.)

## B.   Defendant Is Arrested and Interviewed as a Suspect in an Unrelated Homicide Investigation in December 2021

On December 14, 2021, defendant was arrested again, this time as
a murder suspect.  (ECF No. 36-6 at 37; see ECF No. 36-2 ("Ford
Decl.") ¶¶ 1-4, 8-10.)  She was interviewed by Detective David
Vinton.  (See Declaration of AUSA David Williams, Exhibit A ("Dec. 14
Interview Audio").)

Based on the allegations related to Detective Vinton in
defendant's Motion, the government obtained an audio recording of
defendant's December 14, 2021, interview.  At the beginning of the
interview, Detective Vinton provided a Miranda warning.  (Id. at
7:47-8:10.)  The interview and Detective Vinton's questioning -- all
of which related to the murder investigation -- lasted approximately
10 minutes.  During the interview, defendant requested a lawyer on
three occasions, though questioning continued after each.  (Id. at
8:32-9:02, 11:41-12:15, and 14:27-14:52.)  Notably, nothing about
defendant's illegal possession of a firearm on November 23 was
discussed during the interview.  (Id.)

## C.   The FBI Evaluated Defendant's Firearms Case for Federal Enforcement

On the date of defendant's murder arrest, Detective Vinton
contacted Federal Bureau of Investigation Special Agent Sarah
Corcoran to determine whether the FBI would pursue federal charges

against defendant.  Specifically, Detective Vinton sent a text message to Agent Corcoran, asking whether she would "file federal gun charges on [defendant] if need be."  (Corcoran Decl. ¶ 5; Corcoran Decl., Exhibit B ("Corcoran Texts") at 1.)

Agent Corcoran had no role in the LAPD's murder investigation. (Corcoran Decl. ¶ 4.)  As a result, Agent Corcoran was not present during defendant's arrest on December 14, nor was she involved in the ensuing interview or interactions between Detective Vinton and defendant.  (Id.)  Rather, Agent Corcoran knew Detective Vinton because she sometimes assisted LAPD homicide detectives, and she had previously told them that the FBI could pursue federal firearms charges if the detectives presented her with an appropriate case. (Id. ¶¶ 2-4.)  Additionally, because Agent Corcoran and Detective Vinton worked near one another, he had spoken to her previously about his investigations, including that he planned to arrest defendant for murder on December 14.  (Id. ¶¶ 3-4.)

Based on those conversations, when Detective Vinton asked whether Agent Corcoran would adopt defendant's firearm case for federal prosecution, Agent Corcoran already knew that defendant was a suspect in a murder investigation and had recently been arrested by LAPD officers for being a felon in possession of a firearm. (Corcoran Decl. ¶ 3.)  Thus, Agent Corcoran understood Detective Vinton's request to mean that he was asking whether the FBI would be interested in pursuing federal firearm charges if murder charges were not filed against defendant.  (Id. ¶ 5.)

Agent Corcoran responded to Detective Vinton's initial request for assistance, indicating that she would pursue defendant's case if she could.  (Corcoran Decl. ¶ 6; Corcoran Texts at 1.)  She asked

4

1   whether defendant had admitted to using the November 23 firearm in

2   the homicide, and was told no.  (Corcoran Texts at 1.) She also

3   specified that she could not pursue federal charges unless defendant

4   had previously been sentenced to more than 12 months in prison, the

5   state prosecutor agreed to drop the related state firearm charges,

6   and the state case was still in its early stages.  (Corcoran Decl.

7   ¶ 6; Corcoran Texts at 1.)

8       Detective Vinton and Agent Corcoran did not discuss whether

9   defendant had invoked her Fifth Amendment rights.  (Corcoran Decl.

10  ¶ 7.)  Agent Corcoran also was unaware of the alleged threats

11  referenced in the Motion until defense counsel raised the issue with

12  the United States Attorney's Office following defendant's federal

13  indictment. (Id. ¶ 7.)[2]

14      **D.   Referral to and Charging Decision by the United States**

15          **Attorney's Office**

16      Agent Corcoran presented the case to a federal prosecutor

17  shortly thereafter.  (See Corcoran Decl. ¶ 8; Corcoran Texts at 1.)

18  That is, she collected evidence related to the November 23 firearms

19  arrest and presented the case to the United States Attorney's Office.

20  (Corcoran Decl. ¶ 8.)  She told the prosecutor that defendant was a

21  suspect in a murder investigation, but otherwise told the prosecutor

22  nothing about Detective Vinton's involvement with defendant.  (Id.

23  ¶ 8.)

24

25  ──────────────

26  [2] Defendant makes other serious allegations about her
    experiences on December 14, 2021.  (See Ford Decl. ¶¶ 7-27.)  The
    government does not have the information necessary to respond to
27  those allegations and believes they are not relevant to the pending
    Motion.  As described below, the allegations do not affect the
28  outcome of this motion because the FBI and the United States
    Attorney's Office were unaware of their nature at the time of filing.

Over the next several months, Agent Corcoran obtained the November 2021 police report and associated video footage. (Corcoran Decl. ¶ 8-9.) She also kept Detective Vinton apprised of the progress of the federal review. (Id. ¶ 9; see, e.g., Corcoran Texts at 5-10.) However, Detective Vinton did not offer, and Agent Corcoran did not learn, any additional facts about the December 14 interactions with defendant. (Corcoran Decl. ¶ 7.)

The USAO evaluated defendant's case for federal prosecution and authorized the filing of a complaint on March 30, 2022. (See ECF No. 1.)

Defendant was arrested on April 21, 2022, when she arrived at the Los Angeles County Superior Court in Van Nuys for a hearing. (Corcoran Decl., Exhibit C.) The LAPD Van Nuys station was directly adjacent to the courthouse, and defendant was temporarily taken to that station, where FBI Special Agents inventoried defendant's property and arranged for its release to defendant's girlfriend. (Id.) Agent Corcoran had also alerted Detective Vinton when she arrested defendant, and he met defendant and the Special Agents at the station. (Corcoran Decl., Exhibit D; Corcoran Texts at 9-10.) While Detective Vinton attempted to speak with defendant about the still-ongoing murder investigation, she refused to speak with him. (Corcoran Decl., Exhibit D.)

Defendant was subsequently transported to the United States Marshals Service and made an initial appearance on April 21, 2022. (ECF No. 5; Corcoran Decl., Exhibit C.) On May 11, the grand jury returned an indictment for a violation of 18 U.S.C. § 922(g)(1). (ECF No. 17.)

III. **ARGUMENT**

Defendant's motion seeks to transform a straightforward case about a repeat felon's illegal possession of a gun into a trial about an unrelated state murder investigation.  The motion should be denied for several reasons.  First, defendant misconstrues the law by asserting that a presumption of vindictiveness can apply in this case; it does not, and thus defendant must establish that the United States Attorney's Office acted with a vindictive purpose.  Second, there is no evidence -- none -- that the United States Attorney's Office or the FBI acted with an improper or vindictive purpose.  Third, none of the authority defendant cites justifies imputing a state police officer's purported improper motive to federal law enforcement, nor the extreme remedy of dismissal.  Defendant's alternative relief, seeking to compel the government to produce material not in its possession, fails for many of the same reasons.

A.    **Defendant Misconstrues the Law By Asserting that a Presumption of Vindictiveness Can Apply in the Case**

"A prosecutor violates due process when he brings additional charges solely to punish the defendant for exercising a constitutional or statutory right." United States v. Noushfar, 78 F.3d 1442, 1446 (9th Cir. 1996) (citing Bordenkircher v. Hayes, 434 U.S. 357, 363 (1978)).  However, the Supreme Court and Ninth Circuit have been careful to distinguish improper retribution from permissible prosecutorial decision-making.  "A charging decision does not levy an improper penalty unless it results solely from the defendant's exercise of a protected legal right, rather than the prosecutor's normal assessment of the societal interest in prosecution." United States v. Goodwin, 457 U.S. 368, 380 n.11

1  (1982) (emphasis added); see United States v. Kent, 649 F.3d 906, 912

2  (9th Cir. 2011) ("A prosecutor violates due process when he seeks

3  additional charges solely to punish a defendant for exercising a

4  constitutional or statutory right." (quoting United States v. Gamez-

5  Orduno, 235 F.3d 453, 462 (9th Cir. 2000)).

6       Under this framework, to establish vindictive prosecution, the

7  defendant must (1) "produc[e] direct evidence of the prosecutor's

8  punitive motivation," or (2) "show[] that the circumstances establish

9  a reasonable likelihood of vindictiveness," which "giv[es] rise to a

10 presumption that the Government must in turn rebut." Kent, 649 F.3d

11 at 912-13 (citations omitted).  A presumption of vindictiveness under

12 the second prong ordinarily arises when the prosecutor brings

13 additional charges during or after trial.  See Goodwin, 457 U.S. at

14 376-77, 381; Blackledge v. Perry, 417 U.S. 21, 26-28 (1974).  This is

15 because "a change in the charging decision made after an initial

16 trial is completed is much more likely to be improperly motivated

17 than is a pretrial decision." Goodwin, 457 U.S. at 381.

18      Contrary to defendant's claim, pre-indictment actions cannot

19 establish vindictiveness, much less a presumption of vindictiveness.

20 Under binding precedent, "[v]indictiveness claims are . . . evaluated

21 differently when the additional charges are added during pretrial

22 proceedings," Gamez-Orduno, 235 F.3d at 462 (citations omitted), or -

23 - as here -- before any charges are brought at all.  See United

24 States v. Koh, 199 F.3d 632, 639-640 (2d Cir. 1999) (in a case

25 involving a referral for federal prosecution by a former AUSA, the

26 Court held that defendant must "demonstrate actual vindictiveness,

27 which requires 'direct' evidence, such as a statement by the

28 prosecutor evidencing vindictive motive" (citation omitted)); see

also <u>id.</u> at 639 (presumption of vindictiveness does not arise in "the shift from a state to a federal prosecution").

"For good reasons, the Supreme Court has urged deference to pretrial charging decisions." <u>Kent</u>, 649 F.3d at 913. "[B]efore trial many procedural rights are asserted quite routinely, as 'an integral part of the adversary process', [so] it would be 'unrealistic to assume that a prosecutor's probable response to such motions is to seek to penalize and to deter.'" <u>United States v. Gallegos-Curiel</u>, 681 F.2d 1164, 1168 (9th Cir. 1982); <u>accord</u> <u>Nunes v. Ramirez-Palmer</u>, 485 F.3d 432, 442 (9th Cir. 2007); <u>Koh</u>, 199 F.3d at 639 ("[T]he presumption of prosecutorial vindictiveness generally does not arise in the pretrial setting."). And that deference extends to circumstances like here, where the federal government charged a defendant who had previously been charged by the state. <u>See</u> <u>United States v. Selfa</u>, 720 F. App'x 856, 857 (9th Cir. 2018) ("In cases involving separate sovereigns, we have expressed doubt whether one sovereign's prosecution can be vindictive when it is alleged to have punished a defendant for rights he asserted against a different sovereign" (citing <u>United States v. Robison</u>, 644 F.2d 1270, 1273 (9th Cir. 1981))).

Despite this binding authority, defendant asserts repeatedly that "the mere appearance of prosecutorial vindictiveness can give rise to a presumption of vindictiveness, even in the absence of direct threats." (Motion at 16; <u>cf.</u>, Motion at 18, 19, 21, 27.) Defendant further claims that, "once a defendant raises a presumption of vindictiveness, the burden shifts to the government to furnish 'objective evidence justifying the prosecutor's action.'" (Motion at 17.)

1    However, as described above, courts apply a presumption of

2    vindictiveness when prosecutors increase the charges <u>after or during</u>

3    <u>trial</u>.  <u>See</u> <u>Goodwin</u>, 457 U.S. at 376-77, 381.  Here, in the pre-

4    filing context, no such presumption exists.  <u>See</u> <u>Gamez-Orduno</u>, 235

5    F.3d at 462; <u>Koh</u>, 199 F.3d 632, 639.  In fact, the Supreme Court has

6    expressly cautioned against such an approach for more than forty

7    years.  "A prosecutor should remain free before trial to exercise the

8    broad discretion entrusted to him to determine the extent of the

9    societal interest in prosecution."  <u>Goodwin</u>, 457 U.S. at 382.  Before

10   trial, "a presumption of vindictiveness is not warranted."  <u>Id.</u> at

11   381.  Since the contested charges in this case were plainly filed

12   pre-trial, defendant is not entitled to any presumption.

13   In order to prevail in her request for dismissal, then,

14   defendant would have to show "direct evidence of the prosecutor's

15   punitive motivation."  <u>See</u> <u>Kent</u>, 549 F.3d at 912; <u>United States v.</u>

16   <u>Jenkins</u>, 504 F.3d 694, 699 (9th Cir. 2007); <u>Koh</u>, 199 F.3d at 639.

17   **B.   Defendant's Motion Fails Because There Is No Evidence the**

18       **United States Attorney's Office or the FBI Acted with an**

19       **Improper or Vindictive Purpose**

20   Defendant asks for dismissal on both vindictive prosecution and

21   selective enforcement grounds.  The former requires her to prove that

22   the United States Attorney's Office acted with improper motives.  The

23   latter requires her to show that the FBI did.  She cannot come close

24   to making either showing.

25       1.   <u>The vindictive prosecution claim fails because the</u>

26           <u>prosecutor did not act with an improper purpose</u>

27   "In all but the most extreme cases, it is only the biases and

28   motivations of the prosecutor that are relevant" to vindictive

1  prosecution claims.  United States v. Gilbert, 266 F.3d 1180, 1187

2  (9th Cir. 2001) (citing United States v. Gomez-Lopez, 62 F.3d 304,

3  306 (9th Cir.1995)).  "The purported motivation of another agency

4  . . . is no indication that the prosecutor brought charges against

5  [the defendant] to punish him for his action against the [other

6  agency]."  Gilbert, 266 F.3d at 1187.

7       Defendant's motion is devoid of any evidence or information that

8  federal prosecutors acted with an improper purpose.  That is because

9  there is none.  In the Motion, defendant only mentions prosecutors,

10 as distinct from law enforcement officers like Agent Corcoran and

11 Detective Vinton, a handful of times.  She described how one

12 prosecutor, after obtaining a warrant to search her phone, asked

13 defense counsel to share the phone's password.  (Motion at 8.)  She

14 also describes how another prosecutor asked if defendant would

15 provide information to advance the murder investigation.  (Motion at

16 8-9.)  Neither request is unusual in the context of a criminal case,

17 and both occurred well after the complaint and indictment were filed,

18 and thus had no bearing on the decision to charge defendant with a

19 federal crime.

20      Not only has defendant failed to attribute any vindictive

21 conduct to a prosecutor, she has failed in her much higher burden of

22 showing that the prosecutor then filed charges "solely to punish

23 [defendant] for exercising a constitutional or statutory right."

24 Kent, 649 F.3d at 912.  That is, to prevail in her motion, she was

25 required to show that the federal prosecutor knew about her Miranda

26 invocation and Detective Vinton's alleged threats, was somehow

27 aggrieved by her decision not to cooperate with a local homicide

28 investigation, and then filed federal charges against her solely as

1  punishment for that invocation.  She has not come close to making any

2  of these showings.

3      First, defendant has not alleged that any member of the United

4  States Attorney's Office knew anything about the content of

5  defendant's December 14 interactions with Detective Vinton.  Indeed,

6  Agent Corcoran knew nothing about the alleged constitutional

7  violation committed by Detective Vinton after he arrested her on

8  murder charges -- so Agent Corcoran could not have conveyed that

9  information to the United States Attorney's Office.  (Corcoran Decl.

10 ¶ 7.)  This alone is fatal to defendant's motion.  See Gilbert, 266

11 F.3d at 1187; Gamez-Orduno, 235 F.3d at 463 (no vindictive

12 prosecution where "prosecutor had no knowledge" of relevant facts at

13 a relevant time).

14     Second, defendant has offered no reason to believe federal

15 prosecutors would care whether she invoked her Miranda rights during

16 an LAPD interview concerning a local homicide.  No federal agents

17 were present with Detective Vinton on December 14, and for a simple

18 reason: neither the FBI nor the United States Attorney's Office was

19 investigating that homicide.  Detective Vinton's homicide

20 investigation was not a federal case, and it strains credulity to

21 suggest that a purely local investigation could prompt such

22 prosecutorial animus.  Moreover, a defendant's invocation of her

23 Fifth Amendment rights is "routinely made and is expected as part of

24 the adversary process, so that it is unrealistic to assume the

25 prosecutor's pretrial response would be vindictively motivated."  See

26 Gallegos-Curiel, 681 F.2d at 1170 (entry of not-guilty plea was

27 "routinely made," and so did not support a vindictiveness finding).

28

Defendant, of course, points to Agent Corcoran's willingness to help Detective Vinton, and suggests an improper motive in the two federal prosecutors' requests that she "assist in the homicide investigation." (Motion at 8.) But "the entirely commendable practice of state and federal agents . . . cooperat[ing] with each other in the investigation and detection of criminal activity" is hardly a sign of animus. Elkins v. United States, 364 U.S. 206, 211 (1960). In fact, contrary to defendant's claim, there is nothing nefarious about a homicide detective referring a then-murder suspect with a significant criminal history who had recently been arrested for illegally possessing a firearm to the FBI for federal prosecution. Federal gun charges are frequently brought after state charges are initially filed. Nothing about the referral in this case suggests that Agent Corcoran knew what allegedly happened between defendant and Detective Vinton during the December 14 murder interview -- indeed, Agent Corcoran had no knowledge of the allegations defendant makes in her motion. (Corcoran Decl. ¶ 7.)

Third, defendant has not shown that a federal case was brought against her "solely" for vindictive motives. In fact, if the charges were filed even in part to impose harsher penalties than the ones available in state court, the filing would be permissible. See United States v. Nance, 962 F.2d 860, 865 (9th Cir. 1992) (pursuing harsher federal penalties constitute a legitimate reason for bringing federal charges); Lopez, 474 F.3d at 1212 ("threat of 'serious federal time' falls short of evidence of vindictiveness").

1
2

      2.   <u>The selective enforcement claim fails because the FBI</u>
                  <u>did not act with an improper purpose</u>

3       A selective enforcement claim requires a similar showing.  To

4   prove selective enforcement, defendant "must demonstrate that

5   [1] enforcement had a discriminatory effect and [2] the police were

6   motivated by a discriminatory purpose." <u>Lacey v. Maricopa Cnty.</u>, 693

7   F.3d 896, 920 (9th Cir. 2012) (citing <u>Rosenbaum v. City & Cnty. of</u>

8   <u>S.F.</u>, 484 F.3d 1142, 1152 (9th Cir.2007)).  "Enforcement may be shown

9   through a variety of actual or threatened arrests, searches and

10   temporary seizures, citations, and other coercive conduct by the

11   police." <u>Id.</u>  To prove a discriminatory effect, "the claimant must

12   show that similarly situated individuals . . . were not prosecuted."

13   <u>Id.</u> (quoting <u>United States v. Armstrong</u>, 517 U.S. 456, 465 (1996)).

14       Defendant attempts to satisfy the discriminatory purpose prong

15   by pointing to Detective Vinton's "explicit threats." (Motion at

16   25.)  But this argument has a significant flaw: regardless of what he

17   said to her, Detective Vinton did not, has not, and will not enforce

18   federal firearm laws against defendant.  Rather, the enforcing

19   officers are (1) Agent Corcoran, who presented the matter to federal

20   prosecutors, and (2) the LAPD officers who arrested defendant on

21   November 23, 2021, for illegally possessing a firearm.  <u>See</u> <u>Velasquez</u>

22   <u>v. City of New York Dep't of Buildings</u>, 19-cv-9687 (PKC), 2020 WL

23   2614826, at *3 (S.D.N.Y. May 22, 2020) ("Discipline imposed by an

24   unrelated governmental entity . . . cannot serve as a basis for

25   comparison to determine if defendants . . . were selectively

26   enforcing [Special Inspector Agency] regulations."); <u>Papas v.</u>

27   <u>Leonard</u>, No. 3:10-CV-00550-BR, 2012 WL 1445853, at *11 (D. Or. Apr.

28   25, 2012), aff'd, 544 F. App'x 764 (9th Cir. 2013) (no showing of

selective enforcement where plaintiff challenge to "the [Oregon Liquor Control Commission's] actions," and the commission was "a state agency unrelated to Defendants").  As explained above, Agent Corcoran had no discriminatory purpose, and neither did the arresting officers.

Moreover, defendant cannot show that similarly situated individuals were not prosecuted.  Similarly situated individuals -- i.e., repeat felons, caught with a firearm, while on probation with an open warrant -- are exactly the type of criminals frequently prosecuted under 18 U.S.C. § 922(g)(1).  See, e.g., United States v. Bautista, 989 F.3d 698, 701 (9th Cir. 2021) (federal charges brought after state arrested defendant on an outstanding warrant for a probation violation and found a firearm when he was booked in county jail); United States v. Hinton, 222 F.3d 664, 667-68 (9th Cir. 2000) (federal charges brought after marshal and police officer arrested defendant on an outstanding warrant for a probation violation, searched his house, and found several firearms); United States v. Torres, 853 F. App'x 151, 153 (9th Cir. 2021) (federal charges brought after state found a firearm during defendant's arrest, where defendant had two prior felonies, was on felony probation, and was wanted for another recent domestic violence offense).

Moreover, while Agent Corcoran did not know about the alleged constitutional violation by Detective Vinton, defendant's Motion should still fail even if she did.  When the evidence of a particular case is strong (like this one) and the suspect has a substantial criminal history (like defendant), charges are still frequently filed where a defendant's Fifth Amendment rights may have been violated. See, e.g., Torres, 853 F. App'x at 154 (McKeown, J. dissenting);

1    United States v. Chong, 720 F. App'x 329, 333 (9th Cir. 2017); United

2    States v. Padilla, 387 F.3d 1087, 1093 (9th Cir. 2004); United States

3    v. Polanco, 93 F.3d 555, 559 (9th Cir. 1996).[3]

4         **C.   Defendant's Motion Fails Because Any Purported Improper**

5              **Purpose by Detective Vinton Should Not Be Imputed to the**

6              **Federal Government**

7         Because she cannot show any improper conduct by the prosecutors

8    or the FBI, defendant relies heavily on the argument that Detective

9    Vinton's motives should be imputed in some way to them.  In addition

10   to the reasons set forth above, the attempt fails for several

11   reasons.  First, improper motive cannot be imputed from one sovereign

12   to another.  Second, Detective Vinton had no influence or control

13   over the charging decision, so the government did not act as

14   Detective Vinton's "stalking horse."  And third, this is not a case

15   of "outrageous" misconduct; if anything, it presents something akin

16   to a Miranda violation, for which the proper remedy is suppression

17   rather than dismissal.

18

19

20   _____

21        [3] In addition to vindictive prosecution and selective
     enforcement, defendant ostensibly seeks dismissal for "vindictive
22   enforcement."  However, she only mentions the phrase twice, both
     times in seriatim.  (Motion at 2, 18 (alleging "vindictive
23   prosecution, vindictive enforcement, and outrageous government
     conduct," and a theoretical prohibition on "vindictive prosecution,
     but also vindictive enforcement").)  She cites no authority
24   suggesting a separate, freestanding basis for dismissal on the
     grounds of "vindictive enforcement," and does not separately analyze
25   the theory.  To the extent it exists, though, it appears to be a
     species of selective enforcement -- not a sort of vindictive
26   prosecution.  See, e.g., Heaton v. City of Princeton, 47 F. Supp. 2d
     841, 844 (W.D. Ky. 1997), aff'd, 178 F.3d 1294 (6th Cir. 1999)
27   ("'Vindictive enforcement' is selective enforcement intended to
     discourage or punish the exercise of a constitutional right").  To
28   the extent this claim has been properly presented to the Court, it
     fails for the same reason the selective enforcement claim fails.

1               1.    <u>Improper motive cannot be imputed from one sovereign</u>

2                      <u>to another</u>

3       "[T]he involvement of separate sovereigns tends to negate a

4   vindictive prosecution claim." <u>United States v. Robison</u>, 644 F.2d

5   1270, 1273 (9th Cir. 1981). <u>Selfa</u>, cited above, reiterated the Ninth

6   Circuit's "doubt whether one sovereign's prosecution can be

7   vindictive when it is alleged to have punished a defendant for rights

8   he asserted against a different sovereign." <u>Selfa</u>, 720 F. App'x at

9   857 (citing <u>Robison</u>, 644 F.2d 1273). In other words, the complained-

10   of conduct relates to the powers and prerogatives of a separate

11   sovereign, tending to disprove a claim of punitive motivation. <u>See</u>

12   <u>Kent</u>, 549 F.3d at 912; <u>see</u> <u>United States v. Ng</u>, 699 F.2d 63, 68 (2d

13   Cir. 1983) ("the fact that the prosecutions of the defendants are by

14   two different sovereigns, each acting independently under its own

15   laws and in its own interest without any control of or by the other,

16   renders inapplicable the concept of prosecutorial vindictiveness").

17   The federal government has its own sovereign interests in pursuing

18   defendant, wholly separate and distinct from the state's interest, as

19   expressed through Detective Vinton and his homicide investigation.

20   For that reason alone, the attempt to impute vindictiveness should be

21   denied.

22             2.    <u>The government is not Detective Vinton's "stalking</u>

23                      <u>horse"</u>

24       Defendant suggests that animus can still be imputed to the

25   federal government, though, because Detective Vinton somehow

26   transformed the United States Attorney's Office into the state's

27   "stalking horse." (Motion at 17 (citing <u>Koh</u>, 199 F.3d at 640 and

28   <u>United States v. Sanders</u>, 211 F.3d 711, 717 (2d Cir. 2000)).) That

1   is, she claims the federal prosecutor was "prevailed upon to bring

2   the charges by another with animus." Koh, 199 F.3d at 640. In

3   addition to being confined to a handful of out-of-circuit

4   authorities, the "stalking horse" theory is inapplicable to the facts

5   of this case.

6        Neither Koh, nor Sanders, nor the district court case that

7   apparently gave rise to the term "stalking horse," actually found

8   vindictive prosecution. Koh, 199 F.3d at 640; Sanders, 211 F.3d at

9   719; see United States v. Aviv, 923 F. Supp. 35, 38 (S.D.N.Y. 1996).

10  In Koh, the federal prosecutor only filed charges after a former

11  prosecutor from the same office "made a big noise" about the case.

12  199 F.3d at 640. Even though, as the district court observed, the

13  former prosecutor "was a big man," apparently with significant clout

14  in the prosecutor's office, the Second Circuit found "no evidence

15  that the decision to prosecute was the result of his allegedly

16  improper motives." Id. "The decision to prosecute Koh was based

17  . . . on an independent investigation by the U.S. Attorney's Office."

18  Id. at 641. Sanders is not even about the "stalking horse" theory.

19  211 F.3d at 716-19. And in Aviv, the defendant alleged that he was

20  prosecuted as "retaliation for his public statements that the United

21  States government was responsible in part for" the Lockerbie bombing.

22  923 F. Supp. at 37. The FBI agent in charge of the case had been

23  involved in a grand jury investigation and civil suit for that same

24  incident and had allegedly interfered with the defendant's work on

25  behalf of the FDIC for the same reason. Id. Even so, there was "no

26

27

28

18

objective showing that the prosecution would not have been brought even in the absence of vindictiveness." Id. at 38.[4]

In other words, the "stalking horse" theory cannot save defendant's motion. But even if it could apply where the United States Attorney's Office and FBI had no knowledge of the purported animus in other circuits, it would not apply in the Ninth Circuit without running afoul of Robison. 644 F.2d at 1273 (the "involvement of separate sovereigns tends to negate a vindictive prosecution claim").

Materially, the Ninth Circuit appears not to have adopted the "stalking horse" theory at all. However, it has considered similar imputation arguments and rejected them. In one case, "the only alleged animus was that of [ATF] Agent Campbell, who had no charging authority," so the defendant "failed to show even an appearance of vindictiveness on the part of those members of the United States Attorney's office who made the prosecutive decision." United States v. Hooton, 662 F.2d 628, 634 (9th Cir. 1981). In another case, an FBI agent threatened a defendant, warning that "he 'could be looking

_____

[4] Additional "stalking horse" case law also supports, rather than undermines, the government's position. For instance, in United States v. Dean, where a state prosecutor referred the matter for federal prosecution, the district court applied the stalking horse test. 119 F. Supp. 2d 81, 82-83 (D. Conn. 2000). But it observed that "even if Dean had proffered sufficient evidence that the state prosecutor harbored genuine animus against him, there is no suggestion that the state prosecutor . . . influence[d] United States Attorney's independent decision . . . ." Id. at 84 (citing United States v. Monsoor, 77 F.3d 1031, 1035 (7th Cir. 1996)) ("the animus of a referring agency is not, without more, imputed to federal prosecutors"). In other words, a referral is not enough; if the vindictive individual has no influence in the decision to prosecute, the federal prosecutor cannot become a "stalking horse." Monsoor, 77 F.3d at 1035; see also Koh, 199 F.3d at 640 (notifying United States Attorney of illegal activities does not constitute "prevailing upon" such that the United States Attorney acted as state's "stalking horse").

1   at serious federal time' unless he cooperated" in pre-filing

2   interview.  <u>Lopez</u>, 474 F.3d at 1210.  The Circuit held this threat

3   insufficient to find vindictive prosecution.  <u>Id.</u> at 1211; <u>see</u> <u>id.</u> at

4   1212 ("A prosecutor, and presumably field officers too, may threaten

5   a defendant with prosecution during an interview . . . .").[5]

6        Here, Detective Vinton was wholly uninvolved in the decision to

7   prosecute.  <u>See</u> <u>Monsoor</u>, 77 F.3d at 1035.  He certainly had no

8   charging authority.  <u>See</u> <u>Hooton</u>, 662 F.2d at 634.  As evidenced by

9   Agent Corcoran's text messages, he often learned of the prosecutor's

10  decisions well after the fact, because his federal contact was Agent

11  Corcoran, not the prosecutor.  He was therefore out of the loop once

12  the case was sent to the prosecutor, and he was never able to

13  "influence" the decision to prosecute.

14

15

16

17

_____

18       [5] The principal contrary case cited by defendant is <u>United
    States v. Hollywood Motor Car Co.</u>, 646 F.2d 384, 386 (9th Cir. 1981),
19  <u>cert. granted, judgment vacated</u>, 458 U.S. 263 (1982), which was
    vacated and is not an opinion at all.  (Motion at 15-16.)  While she
20  acknowledges that it was reversed on other grounds, she still relies
    on it, failing to note that the opinion was altogether undone:  the
21  Supreme Court "reversed . . . for lack of jurisdiction and ordered
    that the appeal be dismissed without reaching the merits of the
22  vindictive-prosecution claim."  <u>United States v. Hollywood Motor Car
    Co.</u>, 682 F.2d 1352, 1352 (9th Cir. 1982).  The 1981 opinion is
23  therefore neither binding nor persuasive authority.

24       However, even if it were, it would not support defendant's
    argument.  That case simply stood for the proposition that, when one
25  federal prosecutor expressly evinces animus, and a second federal
    prosecutor goes along with the first prosecutor's charging threats,
26  the court will find vindictive prosecution.  <u>Hollywood Motor Car Co.</u>,
    646 F.2d at 387; <u>see</u> <u>United States v. DeMarco</u>, 550 F.2d 1224, 1226
27  (9th Cir. 1977) (same).  As described elsewhere, threats by a non-
    prosecutor, and by a state officer to boot, are different.  <u>See</u>
28  <u>Robison</u>, 644 F.2d at 1273; <u>United States v. Gilbert</u>, 266 F.3d 1180,
    1187 (9th Cir. 2001).

1          3.    This is not "the most extreme case," nor is it

2                "outrageous"

3          Finally, defendant attempts to circumvent the ordinary rules of

4    vindictive prosecution motions by claiming that the conduct was so

5    outrageous as to require dismissal.  As noted above, "[i]n all but

6    the most extreme cases," only the prosecutor's biases are relevant.

7    Gilbert, 266 F.3d at 1187.

8          Defendant claims this case falls into that extreme or outrageous

9    category, because "Detective Vinton's threats were egregious and

10   continued over the course of four months."  (Motion at 22.)  However,

11   while the government does not condone the alleged conduct,

12   defendant's description approximates to a Fifth Amendment or Miranda

13   violation -- not the sort of extreme or "outrageous" conduct that

14   would justify the extreme remedy of dismissal.  See, e.g., Rochin v.

15   California, 342 U.S. 165, 166 (1952) (police officers broke into the

16   defendant's bedroom, attempted to pull drug capsules from his throat,

17   and forcibly pumped his stomach to retrieve the capsules, violating

18   due process and warranting dismissal); United States v. Franco, 136

19   F.3d 622, 629 (9th Cir. 1998) (outrageous government conduct

20   warranting dismissal includes completely fabricating the crime solely

21   to secure conviction); United States v. McClelland, 72 F.3d 717, 721

22   (9th Cir. 1995) (same).  Here, by contrast, defendant's allegations

23   of misconduct do not even relate to the evidence of the charged

24   offense -- for which the independent evidence is overwhelming.

25         The proper remedy for Miranda-type violations is not dismissal.

26   It is suppression of any affected statement.  See United States v.

27   Walker, 742 F. App'x 284, 285 (9th Cir. 2018) (where defendant "had

28   not eaten since the previous evening, had already endured questioning

21

1    for more than an hour and a half, and responded with mumbles and

2    complaints, while the interrogator in forceful and threatening tones

3    urged him to answer by inter alia, invoking the will of God," 

4    district court properly suppressed statements under Miranda).

5         Since the government does not intend to use any statements made

6    by defendant during her interactions with Detective Vinton, no

7    further remedy is required.

8        **D.   The Court Should Deny Defendant's Motion to Compel**

9         Defendant also asks for a multitude of mostly non-discoverable

10    items.  (ECF No. 36-1.)  She wants to pry into the status of an

11    ongoing and unrelated homicide investigation being conducted by the

12    LAPD, asking (among other things) for communications between

13    Detective Vinton and the Los Angeles County District Attorney's

14    Office, plus all written communications between Detective Vinton and

15    his fellow state law enforcement officers about the homicide

16    investigation.  (Id. ¶¶ 1, 6.)  In short, she asks for everything

17    created in connection with an open murder investigation.

18        "In limited circumstances, individuals have the right to pursue

19    discovery against the government to support claims of vindictive

20    prosecution."  United States v. One 1985 Mercedes, 917 F.2d 415, 421

21    (9th Cir. 1990).  However, the Supreme Court has "adopted a 'rigorous

22    standard,' whereby a defendant must show that 'the Government has

23    failed to prosecute others who are similarly situated to the

24    defendant' as evidence of discriminatory effect." United States v.

25    Sellers, 906 F.3d 848, 852 (9th Cir. 2018) (citing United States v.

26    Armstrong, 517 U.S. 456, 468-69 (1996)).  This "standard for

27    discovery for a selective prosecution claim should be nearly as

28    rigorous as that for proving the claim itself."  Id.; see Sanders,

211 F.3d at 717 (defendant's burden is the same in seeking discovery for vindictive and selective prosecution claims); cf. One 1985 Mercedes, 917 F.2d at 421 (to receive discovery, defendant must first make a "showing of a likelihood of vindictiveness by some evidence tending to show the essential elements of the defense").  As described above, defendant has not alleged any form of animus or vindictiveness by the prosecution, nor has she shown a failure to prosecute similarly situated individuals.  She therefore has not come close to making the necessary showing.

But defendant also suggests that she is entitled to discovery in support of her selective enforcement claim.  (Motion at 26.)  She claims the threshold here is lower, and a defendant must only show "something more than mere speculation."  (Motion at 26) (citing Sellers, 906 F.3d at 855.)  In fact, even where Sellers applies (to reverse stash-house stings, where the nature of the operation implies that all targets will be charged, see Sellers, 906 F.3d at 853) it imposes a higher bar than defendant suggests.  "The district court should use its discretion -- as it does for all discovery matters -- to allow limited or broad discovery based on the reliability and strength of the defendant's showing."  Sellers, 906 F.3d at 855.  While not a high requirement, then, the showing should be proportionate to the discovery request.

In cases like this one, though, where "evidence of similarly situated individuals who were not targeted exists" (i.e., suspects with probation search terms were stopped for traffic infractions), the standard described in Armstrong should apply.  See Sellers, 906 F.3d at 853.  Since defendant did not come close to making the necessary showing above, she has not made it here.  And for similar

23

reason, even under Sellers' reduced requirements, defendant has not
made the necessary showing:  the only vindictiveness she attempts to
describe is Detective Vinton's -- and as discussed above, he is not
enforcing the federal firearms laws here.  In short, no matter how
low the bar, defendant has not done more than speculate about whether
federal law enforcement and the LAPD officers who arrested her on
November 23, 2021, acted with animus.  Sellers, 906 F.3d at 855.

Finally, to the extent the Court disagrees, and finds that some
limited showing has been made, any discovery order should be limited.
See Sellers, 906 F.3d at 855.

Defendant's showing is not strong, yet she asks for an
incredible trove of information.  Virtually all documents related to
an ongoing murder investigation.  (ECF No. 36-1 ¶ 1.)  Communications
between LAPD and a different prosecuting agency.  (ECF No. 36-1 ¶ 6.)
A list of all persons arrested by LAPD who could have been charged
with violating 18 U.S.C. § 922(g), with no temporal boundaries.  (ECF
No. 36-1 ¶¶ 14-15.)  These sorts of requests are simply not
proportionate to the speculation she has offered.  She asks for
significant documentation outside the control of the prosecution
team:  the government does not have access to the internal LAPD
homicide documents listed in paragraphs 3, 4, 5, 6, 7, 8, 12, 13, 14,
15, 16, and 17.  (ECF No. 36-1.)  Again, then, the request far
exceeds the realm of proportionality.

Of the remaining items, the government has produced, or will
soon produce (1) communications in the government's possession
between Agent Corcoran and Detective Vinton (ECF No. 36-1 ¶ 1), and
(2) the only audio recording of the December 14 interrogation known
to the government (ECF No. 36-1 ¶ 2).  Additionally, the government

has already informed defense counsel that arresting officers on April 21, 2022, were not wearing body cameras.  (ECF No. 36-1 ¶ 9.)  The other items pertain to the internal policies and deliberations of the United States Attorney's Office -- and are therefore available only under a selective prosecution theory of discovery.  That theory is undeniably governed by <u>Armstrong</u>, and therefore cannot possibly support the requested discovery.  <u>See also</u> <u>United States v. Camacho</u>, 499 F. App'x 709, 710 (9th Cir. 2012) (defendant's "request for further discovery focused on the government's internal prosecution memorandum, which is protected attorney work product and thus not discoverable").

**IV.  CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court deny defendant's Motion to Dismiss and Motion to Compel Discovery.